## Brown v. State.

Opinion delivered February 29, 1896.

TRIAL,—REMARKS OF COURT—In a prosecution for a robbery committed at a railway station, where the railway company was criticised by counsel for the defense for employing a private detective to aid in procuring a conviction, it was error for the trial judge to say, in the presence of the jury, that he did not know but that the railroad company would be liable for a robbery of a passenger while on its train or on railroad property.

ROBBERY—EVIDENCE.—In a prosecution for robbery, it being shown that defendant gambled, it is not admissible to prove that the place in which the robbery is alleged to have been committed is infested with a gang of gamblers, who are reported to have committed robberies there for several years past.

Appeal from Independence Circuit Court.

RCHARD H. POWELL, Judge.

*Yancey & Fulkerson, John K. Gibson, and Jos. M. Stayton* for appellant.

1. The utterances of the court were prejudicial to defendant.

2. It was error to admit Bagley's testimony. Whart. Am. Cr. Law, p. 997; 30 S. W. 602. Even if appellant had been responsible for Hoxie's bad reputatation, and had been a thief all his life, proof of the commission of other crimes is not admissible, unless they are connected. 34 Ark. 650; 37 *id*. 261; 43 *id*. 368; 54 *id*. 489, 621; Whart. Cr. Ev. sec. 30.

3. The remarks of the prosecuting attorney were highly prejudicial.

*E. B. Kinsworthy*, Attorney General, for appellee.

1. The remarks of the court were not reversible error. 89 Ill. 580.

2. The testimony of Bagley did not prejudice the substantial rights of defendant. The court permitted it, not to show his guilt, but to show why the railroad had interested itself in seeing that the robberies at Hoxie were punished. This court will not reverse, except for errors which are substantial and injurious to appellant. 28 Ark. 531; 31 *id*. 364.

3. The court below, in the midst of all the facts and surroundings, did not consider the remarks of counsel reversible error. The subject and range of the argument is necessarily left to the sound discretion of the trial judge, and, unless grossly abused to the prejudice of defendant, it is not the subject of review by this

court.   34 Ark. 650; 55 N. W. 756; 22 S. W. 1021.   Appellant was not injured by these remarks, hence they constitute no cause for new trial.   32 N. E. 431; 25 S. W. 634.   But appellant failed to move to have them excluded from the jury; so the objection is treated as waived.   24 S. W. 420; 20 *id*. 547; 36 Pac. 793; 23 S. W. 793.

HUGHES, J.   Larry Brown was indicted by the grand jury of the Eastern district of Lawrence county, at the September term, 1895, for the crime of robbery, alleged to have been committed in the forcible taking of the sum of $205 from the person and against the will of one C. D. Rominger, in said county and district.   Appellant entered his plea of not guilty, and filed his application for a change of venue, which was granted, and the cause was transferred to the Independence circuit court for trial.   Thereafter, the cause coming on for trial, a jury was impanelled.   In the opening statement to the jury, one of the counsel for the defendant stated, amongst other things, "that the evidence would show that this was a hellish and damnable conspiracy to put the defendant in the penitentiary; that he would show and prove by the evidence that one H. N. Faulkinbury, an emissary of the Iron Mountain Railway, was at the back of the prosecution, and alone responsible for it; that he had manufactured it out of whole cloth; that he had paid the witness Rominger to swear that he had been robbed by the defendant, and that he (Faulkinbury) was present to see that he swore straight; that the railroad company and Faulkinbury were together handling this man; that they had paid him and furnished him passes to come here to swear, and Faulkinbury's job depends on this man's conviction."

There was evidence tending to show that the defendant was guilty of either robbery or larceny, which must be

determined from the evidence, and the principles of law applicable thereto, as laid down in the case of *Routt* v. *State*, (61 Ark. 594) decided at the present term of this court, which is similar to case at bar.

The evidence shows that, if an offense was committed by the appellant, it was committed at the town of Hoxie, in the county of Lawrence. On the trial the state introduced I. J. Bagley, a witness in her behalf, who testified as follows: "My name is I. J. Bagley, and I live in Lawrence county, and am familiar with Hoxie.". Q. "State what interest the railroad company has in enforcing the law at Hoxie;" to which the defendant objected, which was overruled by the court, and the court stated, in the presence of the jury, that he did not know but that the railroad company would be liable to their passengers for a robbery that had been committed on their passengers while on their trains, and that they would be responsible for a robbery on one of their passengers on railroad property; that counsel for defendant, Mr. Gibson, had stated to the jury, in opening the case, that the railroads were instrumental in bringing this prosecution, and that they had sent their private detective here to see that the witness testified straight, and that the evidence ought to go in to prove that it was not true. The defendant at the time excepted to the ruling of the court, as well as the language of the court in the presence of the jury, and stated to the court that it was not the intention to urge to the jury that the Iron Mountain railroad was doing something that they ought not to do, and that they were attempting to do only what every good citizen would do, and that was to see that the law was enforced, and that they did not blame them for their active interest; but that they desired to show that the detective, Faulkinbury, had been in a position to influence the witness Rominger, and they had furnished him a pass, and the evidence

would be introduced only for the purpose of attacking the credibility of the witness Rominger. Then, in response, the witness answered: "Hoxie is the crossing of the St. Louis & Iron Moutain Railway, and for the past five or six years robberies have occurred there until it was unsafe for any one to get out of the depot. It was dangerous, and the railways were trying to stop it." "Do you know what reputation Hoxie bears?" (Objected to by the defendant, and overruled, and exceptions saved.) "Hoxie bears a bad reputation. It has been infested with a gang of gamblers, and they have been the people who are reported to have committed these robberies in the past five or six years. It is a hard place, and there have been a number of robberies committed there." To both answers of these questions propounded to said witness the defendant at the time objected, and the said objections were overruled, and the defendant at the time excepted.

The court gave instructions, in effect, that the state must prove each and every material allegation in the complaint,—either that defendant committed crime, or that he was present, aiding and abetting others to do so; and, as there were no objections made to them, we do not insert them here. The jury returned a verdict of guilty, and gave him seven years.

The appellant filed his motion for new trial, and set up the following grounds of error of the court: (1) In permitting the state to ask witness Bagley what interest the Iron Mountain Railway had in the enforcement of the law. (2) In stating, in the presence of the jury, that it is probable that the railroad company would be responsible for the robbery of its passengers, and that it is possible that it would be responsible for any robbery of its passengers committed on its grounds or premises. (3) In permitting Bagley to testify that there had been numerous robberies committed at Hoxie

during the past five or six years by the gamblers who frequented the place. (4) In permitting the state to ask what the general reputation of Hoxie was, and in permitting Bagley to state that the town of Hoxie was the junction of the Kansas City and Iron Mountain railroads, and that the place was notorious as being infested with a gang of thieves and robbers, and that they preyed upon the passengers coming over the railroads; that the place was so bad that it was considered unsafe for a passenger to go out of the depot, for fear of being robbed. (5) In permitting associate counsel for the state, in the opening argument, to tell the jury that Hoxie was the home of thieves, robbers, gamblers, and whoremongers, and that was the kind of people who lived there, with but few exceptions, and that Brown was an infernal liar, thief, robber and scoundrel, and had been a robbing scoundrel all his life. (6) In permitting the state's attorney, in the closing argument, to tell the jury the good people of Lawrence county demanded this gang of thieves be proved up, and that a whole army of the Hoxie gang was here, and not one of them dared to go on the stand, as a few of the best people of Lawrence county were here to impeach them, when no evidence of this character had been introduced to the jury. (7) In permitting the state to excuse one of the jurors, who had been selected and accepted, after the jury was complete. (8) The verdict was contrary to the evidence. (9) Contrary to the law. (10) Contrary to both the law and the evidence.

All of the exceptions were properly saved to overruling of motion, as well as to errors mentioned in said trial. The exceptions taken are: (1) To the language of the court in the presence of the jury; (2) to the admission of Bagley's testimony; and, (3) to the remarks of counsel for the state.

When re-
marks of a
trial judge are
prejudicial.
1. When witness Bagley was introduced, and the question, "What interest has the railway in the enforcement of the law at Hoxie?" asked, the court, in the presence of the jury, remarked that, as the railroads would be responsible for robbery of their passengers, etc., and as Mr. Gibson had stated that the railway was instrumental in bringing this prosecution, etc., the evidence ought to go in. The attorney who opened the case was rather unfortunate in the use of intemperate language, and, perhaps, went out of the ordinary line a little, but, as it was merely a statement of what the defendant would offer in proof, it was no part of the evidence, and it was clearly wrong for the court to give utterance to the language he did, especially when, at the time, counsel disclaimed any intention of attacking the railway for their interest, and stated to the court that that sort of proof would only be offered to attack the credibility of the witness Rominger. The law, as uttered by the court, was wrong, and was prejudicial to the defendant.

2. *The admission of Bagley's testimony.* On cross examination, the appellant testified: "I gamble and have gambled in various places." On the trial of this cause, Bagley, a witness for the state, was permitted, over the objection of the appellant, to testify: "Hoxie bears a bad reputation. It has been infested with a gang of gamblers, and they have been the people who are reported to have committed these robberies in the past five or six years. It is a hard place, and there have been a number of robberies committed there." Hoxie is the place where the alleged robbery is charged to have been committed. The appellant testified on the trial that he gambled, and had gambled in various places. It was error to admit the above testimony of the witness Bagley. The appellant was not on trial for the bad reputation of Hoxie, but on a charge of robbery. It is very apparent that this evi-

dence had a tendency to prejudice the appellant with the jury. They would probably, upon such testimony, conclude that, as Hoxie was infested with a gang of gamblers, and they had been the people who are reported to have committed these robberies in the last five or six years, and the defendant is a gambler, it is but fair and reasonable to find that he is the guilty party in this case. The admission of this testimony warranted the jury in considering it, and in attaching much importance to it. It was damaging testimony. For the error in admitting this testimony, the judgment is reversed, and the cause is remanded for a new trial.

3. The remarks of the prosecuting attorney objected to, though probably made in the excitement of the argument, were not proper, but, whether sufficient in themselves to call for a reversal of the judgment, we do not determine, as the case is reversed on another ground, and the remarks will probably not be repeated.