[Crim. No. 2088.   Third Dist.   Oct. 15, 1948.]

THE PEOPLE, Respondent, v. DARRELL BEAN et al.,
Appellants.

Chester Monette and Stanley Woodman for Appellants.

Fred N. Howser, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

ADAMS, P. J.—In an information filed in the Superior Court of Humboldt County defendants were jointly charged in five counts. The first count charged them with a violation of section 209 of the Penal Code. The second count charged a violation of section 217 of the Penal Code, to wit, an assault upon Eugene Shephard with intent to murder him. The third count alleged that defendants took $20 from Shephard without his consent and against his will and by means of force and putting him in fear. The fourth count charged a violation of section 503 of the Vehicle Code; and count five charged a violation of section 487 of the Penal Code, to wit, the stealing of the automobile referred to in count four.

In the proceedings following the arrest of defendants, Bean was represented by counsel of his own choosing, while the court appointed counsel for the other two defendants. Bean and Maxey interposed demurrers to the information which were overruled, and motions to dismiss which were denied. Flachsman filed a motion to strike count two which motion was denied. All defendants were found guilty on counts one, three, four and five, and not guilty on count two.

All made motions for new trials, and Bean and Maxey made motions in arrest of judgment. All motions were denied.

Defendants were sentenced to life imprisonment on count one, without possibility of parole as provided in the verdicts on this count. Sentences on counts three, four and five were ordered to run concurrently with the sentence on count one.

All three defendants have appealed. Appellants Bean and Maxey have joined in a single brief, while Flachsman has filed a separate one. Bean and Maxey urge as grounds for reversal that the trial court erred in overruling their demurrers, and in denying motions in arrest of judgment; that it erred in giving to the jury certain forms of verdicts in respect to count one; that it also erred in giving certain instructions; and that the district attorney was guilty of prejudicial misconduct. Appellant Flachsman urges that the evidence does not show kidnaping with intent to commit robbery; that a violation of section 503 of the Vehicle Code charged in count four is included in the crime of grand theft charged in count five; and that his conviction on count one was the result of passion and prejudice on the part of the jury.

The gist of the argument of Bean and Maxey, that the trial court erred in overruling their demurrers, is that count one is fatally defective because it does not allege that the kidnaping was done with an "intent." Section 209 of the Penal Code provides that: "Every person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away any individual by any means whatsoever with intent to hold or detain, *or who holds or detains, such individual for ransom, reward or to commit extortion or robbery* . . . or who aids or abets any such act, is guilty of a felony and upon conviction thereof shall suffer death or shall be punished by imprisonment in the State prison for life without possibility of parole, at the discretion of the jury trying the same, in cases in which the person or persons subjected to such kidnaping suffers or suffer bodily harm. . . ." (Italics added.)

The information here alleges that the defendants did "then and there wilfully, unlawfully and feloniously, and in violation of section 209 of the Penal Code of the State of California, seize, kidnap and carry away one Eugene Shephard, then and there a human being, by force and violence, and did hold and detain said Eugene Shephard to commit Robbery of said Eugene Shephard, which said Kidnapping and violation of said Section 209 of said Penal Code did proxi-

mately cause said Eugene Shephard, so subjected thereto, to suffer bodily harm.''

Appellants are hypercritical in this behalf, and also ignore the portions of the statute above italicized. In *People* v. *Brown,* 29 Cal.2d 555, 558 [176 P.2d 929], the court said that ''whatever may have been the original motive of the kidnaping, if the kidnaper commits extortion or robbery during the kidnaping, he 'holds or detains' his victim 'to commit extortion or robbery' within the meaning of section 209.'' Also see *People* v. *Dorman,* 28 Cal.2d 846, 852-853 [172 P.2d 686].

Appellants cite no authority supporting their contention that the first count fails to state an offense, nor do they assert that they were misled to their injury, or that any substantial right of theirs was prejudiced by reason of the defect, if it be such. Section 958 of the Penal Code provides that words used in a statute to define a public offense need not be strictly pursued in the information, but other words conveying the same meaning may be used; and section 960 of said code provides that no information is insufficient nor can it be affected by reason of any defect or imperfection in matter of form which does not prejudice a substantial right of the defendant upon the merits. In view of those sections and the provisions of article VI, section 4½, of the Constitution, the alleged insufficiency of the information does not justify a reversal of the judgment.

█ Appellants Bean and Maxey also say that they were deprived of an opportunity to argue their demurrers; but the record does not show that they asked for argument or made, in the lower court, any objection to the course there pursued; and it is well established that objections not made in a trial court will not be considered upon appeal. (8 Cal.Jur., § 520, p. 506; *MacKenzie* v. *Angle,* 82 Cal.App.2d 254, 262 [186 P.2d 30].)

█ The second alleged error is that the trial court erred in giving to the jury five forms of verdict on count one, because four of them were ''guilty forms,'' which caused the jury to be confused, biased and prejudiced. The first of these forms permitted the jury, in the event that it found the defendants guilty, to fix the punishment at death; the second one permitted it to fix the punishment at life imprisonment without possibility of parole; the third omitted the fixing of any penalty by the jury; and the fourth permitted a verdict under the lesser offense defined by section 207 of the Penal

Code. All of these forms were proper since, under the statute, it was discretionary with the jury whether defendants suffer death or life imprisonment without possibility of parole. There is no evidence that the jury was confused, biased or prejudiced. The evidence was ample to sustain any one of the verdicts submitted. The court instructed the jury as to the purpose for which such separate forms were given to them, and it was proper practice for it to see that they were provided with separate and specific forms of verdict providing for every legal conclusion at which they might arrive. See *People* v. *Horiuchi,* 114 Cal.App. 415, 436 [300 P. 457]; *People* v. *Truesdell,* 124 Cal.App. 360, 366 [12 P.2d 476]; *People* v. *Pratt,* 67 Cal.App. 606, 608 [228 P. 47].

As for the instructions which Bean and Maxey assert were erroneous, their argument is based upon the same proposition urged regarding their demurrers—that they were not applicable because the information did not show a violation of section 209, *supra.* Two of the instructions were taken from California Jury Instructions in criminal cases, numbers 658 and 659, and find support in the cases therein cited as authority therefor. The third is based upon the law stated in *People* v. *Kristy,* 4 Cal.2d 504, 507-508 [50 P.2d 798], and is applicable to the facts of this case. Appellants cite no authority in support of their attack on the given instructions, and we find no merit therein.

The final contention of these appellants, that there was prejudicial misconduct on the part of the district attorney, first in that he intimated, by asking, after the court had ordered that witnesses be excluded from the courtroom, that certain deputy sheriffs who were present as witnesses remain reasonably close to the courtroom, as this imputed a dangerous character to the defendants and served to prejudice the jury. They also urge that the district attorney was guilty of misconduct because he stated to the jury certain principles of law upon which he believed the court would instruct as he was stating them; that it was for the judge to instruct the jury. No objection was made by defendants' counsel to these statements of the district attorney, nor was any request made of the court to instruct the jury to disregard them. It is sufficient to say here that such objections cannot be urged for the first time on this appeal. (*People* v. *Codina,* 30 Cal.2d 356, 362 [181 P.2d 881].)

As for the three points raised by appellant Flachsman in his brief, it is admitted by him that the evidence,

without material conflict, shows the following facts: About 11 p. m. on November 26, 1947, Eugene Shephard, a taxi driver in the city of Eureka, was employed by defendants to take them to two different places in the city of Eureka. During the drive they asked him what he would charge to take them to Carson's Camp, a place some 12 miles distant. They did not then employ him, and he returned to his taxi stand. Shortly after 12 o'clock, midnight, appellants returned to the taxi stand and then engaged Shephard to take them to Carson's Camp. On the way appellants requested Shephard to stop so that they could urinate; and the three men and Shephard got out of the cab. After they had reentered and were again proceeding on the way, appellant Bean stated that he had lost his wallet at the place where they had stopped, whereupon Shephard returned them to that spot and they all got out and searched for the wallet, without success. After they reentered the cab and while Shephard was proceeding to turn it around one of the appellants hit him on the head with a wine bottle. Shephard tried to get away but appellants prevented him by pulling his coat down to bind his arms. They then beat him with their fists, rocks and chunks of concrete pavement until he became dazed and fell over on the seat of the taxicab. Appellants then took his wallet and some change which was in his pocket, the amount taken being $25 or $30. When he tried to get up on the seat of the cab one of the appellants took off his undershirt and cinched it around Shephard's neck until he appeared to be unconscious, whereupon the cinch was removed. Appellants then drove the cab, with Shephard in it, a distance of about 12 miles to a point about halfway between Eureka and Arcata. There they dragged Shephard out of the cab and put him in a ditch 2 or 3 feet wide in which there were about 8 inches of water. Boards were placed over him to conceal his body. Shephard did not entirely lose consciousness but feigned death to avoid further violence. Appellants then took the taxicab and drove to Requa in Del Norte County where they abandoned it. Shephard emerged from the ditch and walked to the highway where he secured a ride back to Eureka. Because of the attacks upon him he sustained a broken nose and a fractured skull, his left eye was closed and the right eye nearly closed. He was hospitalized for over two weeks and thereafter suffered dizziness and headaches. Defendants were apprehended near Klamath about 65 miles north of Eureka, and the taxicab was found the next day hidden by an old cannery.

Flachsman argues that the foregoing facts, though showing a violation of section 207 of the Penal Code, do not show a violation of section 209 thereof, and that therefore the penalty imposed upon them is without justification in law. His argument is that no kidnaping of Shephard occurred until after he had been robbed of his money, though it is conceded that he was thereafter kidnaped. Therefore he says that there is no evidence that he was kidnaped for robbery nor evidence from which it might even be inferred that there was an intent to rob him prior to the robbery and the driving away of the taxicab with Shephard in it after the robbery. He concedes that *People* v. *Kristy, supra,* holds that a kidnaping after robbery may be punishable under section 209 because of a general scheme or plan involving all of the transactions, but insists that the evidence in the present case indicates that neither the kidnaping nor the robbery was part of a concerted scheme or all of one transaction.

Respondent replies that there is abundant evidence in the statements of the defendants themselves that prior to their hiring the cab to take them to Carson's Camp they had formed a plan and intention to attack the driver, rob him of his money and deprive him of the cab for the purpose of driving to Klamath in order to hold up a bar; that such evidence sufficiently shows that the defendants enticed, inveigled or decoyed, within the meaning of section 209, Shephard to take them to a deserted spot for the purpose of holding and detaining him to commit robbery; and that this is further shown by the pretense of going back to the spot where they had stopped to urinate because one of them purported to have lost his wallet, all of which was for the purpose of putting Shephard in a position where they might more easily attack him and deprive him of the money and the cab. Respondent further says that the taking of the cab from the immediate presence of Shephard itself constituted robbery (Pen. Code, § 211), and took place subsequent to the kidnaping. Respondent further urges that where a kidnaping takes place after the actual perpetration of a robbery such kidnaping may, nevertheless, be a kidnaping for the purpose of robbery if it may reasonably be inferred that the transportation of the victim was for the purpose of reducing the property to more than a scrambling possession, to effect the escape of the robbers, or to remove the victim to another place where he might less easily sound an alarm; and they cite *People* v. *Kristy, supra,* and *People* v. *Raucho,* 8 Cal.App.2d 655, 664-665 [47 P.2d 1108].

We think that respondent's contention is supported by the record and must be sustained upon authority of the cited cases. In the Kristy case it was argued, as it is here, that the victims of the robbery and kidnaping were first robbed of their money and *thereafter* driven away or kidnaped by defendants. But the kidnapers were, nevertheless, held to be guilty of a violation of section 209 of the Penal Code. See pages 507-508 of that opinion. Also see *People* v. *Wallace,* 36 Cal.App.2d 1, 4 [97 P.2d 256]; *People* v. *Melendrez,* 25 Cal.App.2d 490, 494 [77 P.2d 870]. Furthermore, it is conceded that appellants took the cab from the possession of Shephard after the kidnaping. See section 211 of the Penal Code, and compare *Clark* v. *State,* 87 Tex.Cr. 107 [220 S.W. 100]; *Etzler* v. *State,* 143 Tex.Cr. 327 [158 S.W.2d 495, 497].

█ Flachsman's next ground for reversal is that a violation of section 503 of the Vehicle Code is included in the offense of grand theft. There is substantial authority to the contrary (*People* v. *Jeffries,* 47 Cal.App.2d 801, 809 [119 P.2d 190]); but it is immaterial here, for appellant's sentences run concurrently, and even if there was error, defendant is not prejudiced thereby. (*People* v. *Dallas,* 42 Cal. App.2d 596, 604 [109 P.2d 409]; *Caldwell* v. *United States,* 36 F.2d 738.)

█ Flachsman's final contention, that his conviction was the result of passion and prejudice, is without merit. He cites no authority supporting his position; and the evidence is entirely sufficient to sustain defendants' conviction. In the absence of anything in the record to indicate the contrary, we assume that the jury acted without passion or prejudice; also the trial judge, by his rulings on the motions after the verdicts, evidenced his satisfaction with the conclusions of the jury.

The judgments and orders appealed from are and each of them is affirmed.

Peek, J., and Thompson, J., concurred.

Appellant Maxey's petition for a hearing by the Supreme Court was denied November 9, 1948.